**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-cv-60518-BLOOM/Valle**

MYCOSKIE, LLC,

      Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

      Defendants.
_____/

**<u>ORDER GRANTING PLAINTIFF'S MOTION
FOR ENTRY OF PRELIMINARY INJUNCTION</u>**

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Preliminary Injunction (the "Motion"), ECF No. [6]. The Court has carefully considered the Motion, the record in this case, and the applicable law, and is otherwise fully advised.

By the instant Motion, Plaintiff, Mycoskie, LLC ("Plaintiff"), moves for entry of a preliminary injunction against Defendants,[1] for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

The Court held a telephonic hearing on March 14, 2019, which was attended by counsel for Plaintiff only. During the hearing, Plaintiff directed the Court to evidence supporting the Motion for Preliminary Injunction. Prior to the hearing, Plaintiff notified the Court that it had received email inquiries from certain Defendants[2] to which Plaintiff provided notice of the hearing

---

[1] Defendants are the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto (collectively, "Defendants").

[2] Plaintiff's counsel was also contacted via email by two attorneys based in China regarding a possible resolution of the matter on behalf of Defendant Numbers 1, 4, 6, 11, 15, 18, 22, and 23, ECF No. [21] at n.1. However, counsels nor Defendants have entered any formal appearance or filed any response with the

and Defendants' rights to file answers in response to Plaintiff's claims. ECF No. [21-1] ("You have the right to file an Answer with the Court in response to Plaintiff's claims."). Nevertheless, none of the Defendants formally responded to the Motion, nor have they made any appearance or filing in this case, other than the above-mentioned emails, either individually or through counsel. Because Plaintiff has satisfied the requirements for the issuance of a preliminary injunction, the Court grants the Motion.

## I. FACTUAL BACKGROUND[3]

Plaintiff is the owner of the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "TOMS Marks"):

| Trademark | Registration Number | Registration Date | Class / Relevant Goods |
|---|---|---|---|
| **TOMS** | 3,353,902 | Dec. 11, 2007 | IC 025 – Canvas shoes, shoes |
| **TOMS** | 3,566,093 | Jan. 20, 2009 | IC 025 – Clothing, namely, canvas shoes, shoes, caps, shirts, t-shirts, and hats |
| TOMS (logo) | 3,765,503 | Mar. 23, 2010 | IC 025 – Baseball caps; caps; hats; canvas shoes; footwear for men and women; shoes; and shirts |
| **ONE FOR ONE** | 4,204,485 | Sep. 11, 2012 | IC 025 – Clothing, namely hats, sweatshirts, hooded sweatshirts, t-shirts and shoes |

*See* Declaration of Jessica Murray, ECF No. [6-1] at 4-5; ECF No. [1-2] (containing Certificates of Registrations for the TOMS Marks at issue). The TOMS Marks are used in connection with the

---

Court as of this Date.

[3] The factual background is taken from Plaintiff's Complaint, ECF No. [1], Plaintiff's Motion, ECF No. [6], and supporting evidentiary submissions. Plaintiff filed declarations and exhibits annexed thereto in support of its Motion. The declarations are available in the docket at the following entries: Declaration of Jessica Murray, ECF No. [6-1], Declaration of Kathleen Burns, ECF No. [6-2], and Declaration of Christine Ann Daley, ECF No. [6-4].

manufacture and distribution of high-quality goods in the categories identified above. *See* Declaration of Jessica Murray, ECF No. [6-1] at 4-5.

Defendants, by operating Internet based e-commerce stores under the seller identification names identified on Schedule "A" hereto (the "Seller IDs"), have advertised, promoted, offered for sale, and sold goods bearing what Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the TOMS Marks. *See* Declaration of Jessica Murray, ECF No. [6-1] at 10-14.

Although each Defendant may not copy and infringe each TOMS Mark for each category of goods protected, Plaintiff has submitted sufficient evidence showing each Defendant has infringed, at least, one or more of the TOMS Marks. *See* Declaration of Jessica Murray, ECF No. [6-1] at 12-14. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the TOMS Marks. *See* Declaration of Jessica Murray, ECF No. [6-1] at 10, 14.

Counsel for Plaintiff retained Invisible Inc, a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing TOMS branded products by Defendants. *See* Declaration of Jessica Murray, ECF No. [6-1] at 11; Declaration of Kathleen Burns, ECF No. [6-2] at 3; Declaration of Christine Ann Daley, ECF No. [6-4] at 2. Invisible Inc accessed the Internet based e-commerce stores operating under the Seller IDs, placed orders from each Defendant for the purchase of products bearing counterfeits of, at least one, of the TOMS Marks, and requested each product to be shipped to its addresses in the Southern District of Florida. *See* Declaration of Kathleen Burns, ECF No. [6-2] at 4. Following the submission of each order, Invisible Inc finalized payment for the products ordered from Defendants via PayPal to

Defendants' respective PayPal accounts[4] which are identified on Schedule "A" hereto. *See* Declaration of Kathleen Burns, ECF No. [6-2] at 4. At the conclusion of the process, the detailed web page captures and images of the items ordered via Defendants' Seller IDs, together with photographs of the items received, were sent to Plaintiff's representative for inspection. *See* Declaration of Kathleen Burns, ECF No. [6-2] at 4; Declaration of Jessica Murray, ECF No. [6-1] at 12; Declaration of Christine Ann Daley, ECF No. [6-4] at 2.

Plaintiff's representative conducted a review of and visually inspected the TOMS branded goods purchased by Invisible Inc and the TOMS branded items offered for sale via each of the Seller IDs by reviewing the e-commerce stores operating under each of the Sellers IDs, or detailed web page captures of the products bearing the TOMS Marks, together with photographs of certain TOMS branded goods received, and determined the products were non-genuine, unauthorized versions of Plaintiff's goods. *See* Declaration of Jessica Murray, ECF No. [6-1] at 12-14.

On February 28, 2019, Plaintiff filed its Complaint, ECF No. [1], against Defendants for trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement. On February 28, 2019, Plaintiff filed its *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, ECF No. [6]. On March 1, 2019, this Court entered a sealed Temporary Restraining Order, enjoining Defendants from, among other actions, continuing to manufacture, promote, and/or sell any products bearing Plaintiff's alleged infringed trademarks. The Temporary Restraining Order also directed PayPal, Inc., to identify and restrain funds in payment accounts associated with Defendants and to divert those funds to a holding account. Pursuant to the Court's March 1, 2019 Order, Plaintiff served Defendants with a copy of the

---

[4] Defendants use money transfer and retention services with PayPal. *See* Declaration of Kathleen Burns, ECF No. [6-2] ¶ 4.

Complaint together with copies of the *Ex Parte* Application for Entry of Temporary Restraining Order, and the Court's March 1, 2019 Temporary Restraining Order, providing notice and copies of the March 1, 2019 Temporary Restraining Order and Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order via e-mail to each Defendant's corresponding email/online contact form, and by posting copies of the Temporary Restraining Order and all other pleadings and documents on file in this action on the website located at http://servingnotice.com/M40pr5/index.html. Thereafter, Certificates of Service were filed confirming service on each Defendant, ECF Nos. [19] and [20].

## II. LEGAL STANDARD

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

## III. ANALYSIS

The declarations Plaintiff submitted in support of its Motion for Preliminary Injunction support the following conclusions of law:

A. Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing counterfeits, reproductions, or colorable imitations of the TOMS Marks, and that the products Defendants are selling and promoting for sale are copies of Plaintiff's products that bear copies of the TOMS Marks;

5

B.  Because of the infringement of the TOMS Marks, Plaintiff is likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in Plaintiff's Complaint, Motion for Preliminary Injunction, and accompanying declarations on file, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers because it is more likely true than not that;

1.  Defendants own or control e-commerce stores via, at least, one Internet marketplace website, operating under their seller identification names which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of Plaintiff's rights; and

2.  There is good cause to believe that more counterfeit and infringing products bearing Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products and an unnatural erosion of the legitimate marketplace in which it operates.

C.  The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products, if such relief is not issued; and

D.  The public interest favors issuance of the preliminary injunction to protect Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods.

E.  Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing

counterfeits and infringements of the TOMS Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (11th Cir. 1995) (citing *Fed. Trade Comm'n v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G. In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## IV. CONCLUSION

Accordingly, after due consideration, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion, **ECF No. [6]**, is **GRANTED** as follows:

(1) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are enjoined and restrained until further Order of this Court:

> a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the TOMS Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and
>
> b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing the TOMS Marks, or any confusingly similar trademarks;

or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the TOMS Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled or held by, or subject to access by, any Defendant, including but not limited to, any assets held by or on behalf of any Defendant.

(2) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the TOMS Marks or any confusingly similar trademarks, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under their Seller IDs;

(3) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the TOMS Marks, or any confusingly similar trademarks within metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to Internet based e-commerce stores registered, owned, or operated by each Defendant, including the Internet based e-commerce stores operating under the Seller IDs;

(4) Each Defendant shall not transfer ownership of the Internet based e-commerce stores operating under their Seller IDs during the pendency of this Action, or until further Order of the Court;

(5) Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Internet based e-commerce stores operating under their Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Internet based e-commerce stores operating under their Seller IDs that may have been deleted before the entry of this Order;

(6) Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to PayPal, Inc. ("PayPal"), and their related companies and affiliates shall, to the extent not already done, (i) immediately identify all financial accounts and/or sub-accounts, associated with the Internet based e-commerce stores operating under the Seller IDs and/or the e-mail addresses identified on Schedule "A" hereto, as well as any other accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court;

(7) Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, PayPal and its related companies and affiliates, shall further to the extent not already done, provide Plaintiff's counsel with all data that details (i) an accounting of the total funds restrained and identifies the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions

related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, PayPal, and its related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court;

(8) This Order shall apply to the Seller IDs, associated e-commerce stores, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting the TOMS Marks at issue in this action and/or unfairly competing with Plaintiff;

(9) Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

(10) As a matter of law, this Order shall no longer apply to any Defendant or associated seller identification name dismissed from this action or as to which Plaintiff has withdrawn its request for a preliminary injunction;

(11) Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall maintain its previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice;

(12) Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators

of the Internet marketplace websites and/or financial institutions, payment processors, banks, escrow services, and money transmitters, including but not limited to PayPal and eBay.com, and their related companies and affiliates shall, to the extent not already done, at Plaintiff's request, provide Plaintiff's counsel with any e-mail address known to be associated with Defendants' respective Seller IDs.

(13)  This Order shall remain in effect during the pendency of this action, or until further Order of this Court.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 14, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record via e-mail

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER, SELLER ID AND PAYPAL ACCOUNT**

| Def. No. | Seller ID | Associated PayPal Account |
|---|---|---|
| 1 | 2018prettycat | songyi951111@outlook.com |
| 1 | happyflower2018 | songyi951111@outlook.com |
| 2 | 6cn4525 | 1025562058@qq.com |
| 3 | agepochfishing-es | agepochfishinges@gmail.com |
| 4 | agepochfishingworld | dragonshopworld@gmail.com |
| 5 | bee_stars | dreamworld2016@163.com |
| 6 | bluesky*2019* | limi201919@outlook.com |
| 7 | bracehz | helijuans@hotmail.com |
| 7 | thrivingzgy | helijuans@hotmail.com |
| 7 | tongyaostore | helijuans@hotmail.com |
| 8 | cheche_46 | chenchen891009@me.com |
| 9 | cz_discount | charmiyaj@gmail.com |
| 10 | fashionaclassic | ypyyq@outlook.com |
| 11 | goodstore2016 | lifan0070@outlook.com |
| 12 | goodswellseller2015 | buygoodsweb@hotmail.com |
| 13 | hausdting | huashen3@hotmail.com |
| 14 | kacheyuangege-2 | kacheyuangege@hotmail.com |
| 15 | libin15181 | libin1518@hotmail.com |
| 16 | lichunhengrui3 | lichunhengrui@aliyun.com |
| 17 | loveke-1991 | kekehe1991@outlook.com |
| 18 | lovelydress0808 | yangdongsheng0808@hotmail.com |
| 19 | lucewangsotre | lucewangz@126.com |
| 20 | pinkcharmsd | jiangqingbian@outlook.com |
| 21 | shigemei | zolayu@126.com |
| 22 | sundaytime001 | wuhui20181987@outlook.com |
| 22 | upday | wuhui20181987@outlook.com |
| 23 | trendency000 | goodbuy201819@outlook.com |
| 24 | unclew1814-9 | leleliule@outlook.com |
| 25 | wqbrothers_4 | wqbrothers@126.com |
| 26 | wulishaoqingstore | jianwuxinjia@outlook.com |
| 27 | yangjiahua11076 | yangjiahua1107@yeah.net |